```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BEVERLY CLARKE

                              Plaintiff,
                                                              MEMORANDUM &
                                                              ORDER
           -against-                                          21-CV-4901-SJB

ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-----------------------------------------------------------------X
```

**BULSARA, United States Magistrate Judge:**

Beginning in April 2018, Beverly Clarke has sought disability insurance benefits and supplemental social security income based on a disability that she alleges began in May 2016, when she was struck in the head by a swinging door that resulted in her having constant headaches, dizziness, falls, constant pain in her head, neck, shoulders and both knees. In the intervening seven years, an ALJ has twice denied her applications, once following a remand by the Social Security Administration Appeals Council. Unfortunately, the ALJ ignored the Appeals Council's remand order and also committed additional errors in his second denial, which requires yet another remand.

To review, the Court's task is to determine whether upon a "plenary review of the administrative record" there is "substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). A Social Security Administration administrative law judge ("ALJ") must follow a five-step process, outlined in the Code of Federal Regulations, (*see* 20 C.F.R. § 404.1520(a)(4)(i)-(v)), to determine whether a claimant is disabled. *See generally Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (detailing five-step process and associated burden-shifting).

1

"If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). In the end, the "substantial evidence standard is 'not high.'" *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022)). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tibbles v. Comm'r of Soc. Sec.*, No. 22-CV-1127, 2023 WL 3477127, at *1 (2d Cir. 2023) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (same). The Commissioner's "findings of fact must be upheld unless a 'reasonable factfinder would *have to conclude otherwise*.'" *Tibbles*, 2023 WL 3477127, at *1 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)). That being said, where a reviewing Court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," the Court "will not hesitate to remand for further findings or a clearer explanation for the decision." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (quotations omitted).

The ALJ first issued a decision on October 7, 2019. The Appeals Council vacated and remanded, directing the ALJ to (1) reevaluate Clarke's RFC while giving additional consideration to the opinion of a consulting physician, Dr. Olga Yevsikova, who opined that Clarke had a limitation in performing overhead activities and reaching with her left arm, findings that the ALJ ignored in the first instance; (2) properly consider Clarke's subjective complaints—and not disregard her complaints about intensity, persistence, and the limiting effect of her symptoms solely because the objective medical evidence

2

does not substantiate those symptoms—by evaluating Clarke's daily activities and levels of treatment, among other things. (Administrative Tr., Dkt. No. 8 at 85–86).

The ALJ ignored large swaths of the Appeals Council's remand order.

*First*, the Appeals Council was quite clear: in making an assessment of Clarke's limitations, the ALJ must give specific consideration to two things: (a) Dr. Yevsikova's opinions that Clarke "had a moderate limitation in performing overhead activities and reaching with the left arm," because these facets had been omitted in the first opinion; and (b) the exam findings that show post-sprain, Clarke had "severe impairment[s]" in both shoulders. (*Id.* at 85). The Appeals Council noted that Dr. Yevsikova's opinions and the exam findings "warrant[ed] the inclusion of additional limitations" in Clarke's RFC assessment. (*Id.*).

Yet, the ALJ did not evaluate Dr. Yevsikova's opinions as directed. The ALJ's first RFC assessment was that Clarke had the ability "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can only occasionally climb, kneel, crouch, crawl, stoop or balance; and she cannot be exposed to workplace hazards." (*Id.* at 74). The Appeals Council noted that while the ALJ had found Dr. Yevsikova's opinions persuasive, (*id.* at 76, 85), the ALJ had not incorporated all of the limitations she identified, an error that necessitated remand. Dr. Yevsikova's finding was that Clarke:

> has moderate limitations to squatting, kneeling, climbing stairs, bending, heavy lifting, heavy carrying, performing overhead activities and reaching with her left arm. She has mild to moderate limitations to walking for a prolonged time, standing for a prolonged time, mild limitations to sitting for [a] prolong[ed] time. The claimant should avoid unprotected heights, [and] should avoid any activity that can put her at risk for a fall.

3

(*Id.* at 387).  But on remand, the ALJ only changed his RFC assessment by simply adding in the words "reach overhead with her left arm," (Administrative Tr. at 96), without any analysis.  This conclusory addition collapses two different components of Dr. Yevsikova's assessment—which found separate limitations in Clarke's ability to perform "overhead activities" *and* her ability to "reach[] with her left arm," (*id.* at 387)—into a single finding.  There was no single consolidated finding about reaching overhead with her left arm.

The RFC assessment on remand also omits other aspects of Dr. Yevsikova's opinion—about Clarke's mild to moderate limitations in walking, standing, and sitting for a prolonged period of time; her need to avoid unprotected heights or activities that put her at a risk for a fall; and her moderate limitations in bending.  To the extent that this is incorporated into the ALJ's general finding that Clarke can perform "light work" it is never stated in his decision; to the extent that he was disregarding these additional aspects of Dr. Yevsikova's opinions, the ALJ was required to state which opinions he was accepting and those he was rejecting, and explain why certain opinions were being rejected.  *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) ("The regulations further require the agency to 'explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision.'" (alterations in original) (quoting 20 C.F.R. § 404.1520c(a))); *e.g.*, *Hall v. Comm'r of Soc. Sec.*, No. 19-CV-5138, 2023 WL 3389763, at *5 (E.D.N.Y. May 11, 2023) ("[T]he ALJ's decision does not provide a sufficiently clear indication regarding her unexplained justification for implicitly rejecting this portion of Dr. Go's opinion to provide a basis for meaningful judicial review[.]" (quotations omitted)); *Krupczyk v. Comm'r of Soc. Sec.*, 342 F. Supp.

4

3d 352, 360 (W.D.N.Y. 2018) ("Also absent from the written determination is any discussion as to why the ALJ disagreed, at least to some extent, with Dr. Hucknell's opinion on various work-related limitations (*i.e.*, bending, twisting, stooping, balancing, reaching, climbing).  Some meaningful discussion as to why the ALJ disagreed with these limitations is imperative for the Court to make a well-informed determination as to whether the RFC is supported by substantial evidence, particularly where the RFC requires occasional bending, stooping, overhead reaching, balancing, twisting, and climbing stairs.  In other words, the ALJ gave no meaningful explanation as to why the assessed RFC directly conflicts with Dr. Hucknell's opinion on several of these key, work-related activities." (citations and quotations omitted)).

In sum, by collapsing Dr. Yevsikova's findings in a non-sensical way, inconsistent with what this doctor actually stated, and ignoring other aspects of her opinion, the ALJ ignored the remand order's directive that he incorporate all aspects of Dr. Yevsikova's limitations into the RFC assessment—(*see* Administrative Tr. at 86 ("Give further consideration to [Clarke's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations . . . .  In so doing, give additional consideration to the medical source opinion offered by Dr. Yevsikova pursuant to the provisions of 20 CFR 404.1520c and 416.920c.")—as well the requirement that any rejection of medical source opinion be explained.  Each of these errors independently requires remand.  *See Kyle P. v. Comm'r of Soc. Sec.*, No. 3:21-CV-223, 2022 WL 1659193, at \*5 (N.D.N.Y. May 25, 2022) ("An ALJ's failure to follow an order of the Appeals Council is reversible error.") (collecting authorities); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable

5

us to decide whether the determination is supported by substantial evidence."); 20 C.F.R. § 404.1520c(b)(2)("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

*Second*, the ALJ also failed to incorporate into his RFC the "severe impairment" in *both* shoulders, even though the Appeals Council found that this severe impairment "warrant[s] the inclusion of additional limitations." (Administrative Tr. at 85). If the ALJ considered these severe impairments, such incorporation is nowhere to be found. As noted, the ALJ's RFC finding differs in only one respect from his prior decision: the addition of a limitation on Clarke's ability to "reach overhead with her left arm." (*Id.* at 96). And that was a flawed attempt to respond to the Appeals Council's directive about Dr. Yevsikova, and refers only to the left, not both, shoulder. So again, the ALJ made the same determination he did in the first instance that Clarke has a "severe impairment" "post-sprain of both shoulders," (*id.* at 95), but failed to incorporate that limitation into his RFC, despite direction from the Appeals Council to do so. This requires remand.

Moreover, and *third*, the Appeals Council noted that the ALJ's finding about Clarke's subjective complaints do "not reflect consideration of the required factors to make such a finding." (*Id.* at 86). As a remedy, the Appeals Council directed the ALJ to "[f]urther evaluate the [Clarke's] alleged symptoms and provide a rationale," for any conclusions, as the regulatory framework demands. (*Id.*)

The ALJ simply chose to ignore this part of the decision. His first decision found that Clarke's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

6

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 74–75). And the Appeals Council found this lacking, because a claimant's symptoms are not evaluated solely against the objective medical evidence, but also with respect to other factors like "daily activities, levels of treatment, [and] factors that precipitate and aggravate symptoms." (Administrative Tr. at 86); *see also Evans v. Colvin*, 649 F. App'x 35, 39 (2d Cir. 2016) ("If a claimant's subjective evidence of pain suggests a greater severity of impairment than can be demonstrated by objective evidence alone, the ALJ must consider other evidence, such as the claimant's daily activities, duration and frequency of pain, medication, and treatment." (citing 20 C.F.R. § 404.1529(c)(3))); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) ("[T]o the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.").

The ALJ failed to do this. The ALJ's opinion on remand contains the same conclusion from his first opinion—that Clarke's symptoms are not consistent with the objective medical evidence, (Administrative Tr. at 96)—and includes the single sentence conclusory statement that Clarke's "reported activities of daily living to the consulting examiner are not consistent with the claimant's allegations or with the very restrictive limitations given by [the] treating physician." (*Id.*). But what daily activities, and why were they inconsistent? And what about the other analysis the Appeals Council required and the regulatory scheme requires of an ALJ: the levels of treatment and aggravating factors reported by Clarke? *Meadors*, 370 F. App'x at 185 n.2 ("[T]he ALJ should be mindful to consider each of the factors set forth in § 404.1529(c)(3). He attributed great weight to the fact that the Appellant is able to do light cooking and can do housework

7

and go shopping with help from her children. But Appellant's daily activities are only a single factor of many to be considered, and the ALJ's characterization of those activities was less than fully accurate." (quotations omitted)). If inconsistent, what credibility determination, if any, was the ALJ making about Clarke's symptoms—for instance, does the inconsistency regarding daily activities render all her statements about her symptoms and their causes unworthy of belief? *E.g.*, *Lucas v. Berryhill*, 689 F. App'x 4, 5 (2d Cir. 2017) ("Here, the ALJ considered various sources of evidence and justifiably declined to give less than determinative weight to Lucas's testimony regarding how her pain affected her ability to function independently. The ALJ only partially credited Lucas's testimony because, in October 2011, she reported that she independently cooked, cleaned and performed household chores, but by March 2012, she stated she could no longer do any of those things, with little evidence in the record showing that her condition significantly worsened in that short time frame." (quotations omitted)). A cursory unexplained reference to "daily activities," bereft of any citation to any record citation, falls far short of what the Appeals Council directed or the regulations—and specifically 20 C.F.R. § 404.1529—demand. *See Watson v. Berryhill*, 732 F. App'x 48, 52 (2d Cir. 2018) ("The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the ALJ gave to the individual's statements and the reasons for that weight." (quotations omitted)).[1]

---

[1] There is also another, threshold error. The first step in the 1529(c)(1) analysis is whether the claimant suffers from a medical impairment that "could reasonably be expected to produce" the pain alleged by the Claimant herself. *See* 20 C.F.R. § 404.1529(c)(1). Such an analysis is present in the ALJ's first decision, (Administrative

8

\*                                          \*                                          \*

There are two other errors that warrant remand which were not part of the Appeals Council's order but present in the ALJ's second decision. Given their gravity, the Court directs that these must also be addressed on remand.

*First*, the ALJ found Dr. Yevsikova's opinions persuasive, but as the Appeals Council noted, he failed to incorporate all of her limitations into the RFC. And as noted above, he did the same thing again in his second opinion. But the ALJ compounded this error by failing to incorporate all of the limitations Dr. Yevsikova found in his questioning of the vocational expert at the second Oral Hearing. The ALJ asked the vocational expert what jobs could be performed by a person who "could only occasionally climb, kneel, crouch, crawl, stoop or balance, [or] . . . reach overhead," and could have "no exposure to workplace hazards or unprotected heights," and was otherwise limited to work at the "light exertional level." (Administrative Tr. at 26). Yet the limitations that Dr. Yevsikova found were far broader: "to squatting, kneeling, climbing stairs, bending, heavy lifting, heavy carrying, performing overhead activities and reaching with her left arm; . . . to walking for a prolonged time, standing for a prolonged time, mild limitations to sitting for [a] prolong[ed] time." (*Id.* at 387). Yet none of the limitations—and importantly those related to climbing, walking, standing or

---

Tr. at 74), but absent in the second. Perhaps the analysis was omitted because the ALJ believed that was unnecessary in light of the remand directive. But given his failure to follow the Appeals Council order in any meaningful way, that appears unlikely. In any event, the analysis should have been explicit, and the omission alone independently warrants remand. *Meadors,* 370 F. App'x at 184 ("The ALJ eschewed that two-step inquiry. He did not expressly consider the threshold question of whether Appellant had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain." (quotations omitted)) (remanding for failure to engage in threshold inquiry).

9

sitting—are asked of the vocational expert.[2] Nor is the "severe limitation" attendant to both of Clarke's shoulders part of the ALJ's questioning. "If hypothetical questions do not include all of a claimant's impairments, limitations and restrictions, or are otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled." *Polynice v. Colvin*, No. 8:12-CV-1381, 2013 WL 6086650, at *16 (N.D.N.Y. Nov. 19, 2013), *aff'd*, 576 F. App'x 28 (2d Cir. 2014); *see also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995) ("[T]he combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe."); *e.g.*, *Samuel N. v. Comm'r of Soc. Sec.*, No. 21-CV-6414, 2023 WL 3962821, at *4 (W.D.N.Y. June 13, 2023) ("Accordingly, the ALJ's failure to either include the marked reaching limitation that Dr. Datoni identified or explain why he declined to do so undermines the vocational expert's testimony that Plaintiff could perform jobs that involve frequent to constant reaching."). Such an error requires remand. *Id*.

*Second*, the analysis of the jobs available to Clarke reflects the "unblinking acceptance of conclusory opinions by vocational expert testimony by the ALJ," "predicated on plainly obsolete positions." *Wagner v. Comm'r of Soc. Sec.*, 620 F. Supp. 3d 3, 5 (E.D.N.Y. 2022) (quotations omitted). The vocational expert concluded—and the ALJ accepted—that Clarke could perform three jobs in the national economy: (1) counter clerk; (2) usher; and (3) investigator, dealer accounts. (Administrative Tr. at

---

[2] In subsequent hypotheticals, the ALJ asked the vocational expert what jobs were available for a claimant who could only perform sedentary work or other hypotheticals that did not match the limitations in the record. (Administrative Tr. at 27–28).

100).  The first of these "counter clerk," has the Dictionary of Occupational Titles ("DOT") Code 249.366-010, which is actually "counter clerk (photofinishing)," involves "selling flashcubes, film and camera batteries." *Piorkowski v. Comm'r of Soc. Sec.*, No. 21-CV-5479, 2022 WL 17824052, at *4 (E.D.N.Y. Dec. 20, 2022) (quotations omitted). Other judges in this Court and nationwide have condemned the practice the ALJ adopted here—and which the Commissioner chose to defend on appeal—of relying on this job title:

> the notion that there are opportunities waiting for this plaintiff to work as a photo finishing counter clerk belies all common sense.  The ubiquity of smartphones with built-in digital cameras has consigned consumer film processing to the most niche of markets: by one estimate in 2015, there were only 190 photo development shops left in the United States.  Thus, the photo finishing counter clerk has gone the way of the VCR movie rental clerk or a carbon paper salesperson, and testimony about such archaic posts have no place in determining important rights of our citizenry.  This is not the first court decision to hold that photo shop counter clerk is both an obsolete position and an inappropriate basis upon which to deny disability benefits.

*Wagner*, 620 F. Supp. 3d at 5.  "And the truth is, . . . the number of jobs in the U.S. economy for photo development counter clerks . . .is, in all probability, effectively zero." *Id.* at 6.

Unfortunately, the unyielding robotic deference to the vocational expert continues with respect to the "investigator, dealer accounts" position.  A person in that job "visits dealers to 'verify purchases financed by [a] bank against physical inventory of merchandise,' observes 'features of merchandise . . . to verify item against computer printout,' and 'examines records and questions dealer to determine disposition of items missing from inventory and to elicit information on dealer arrangement for payment to bank for merchandise sold.'" *Robin M. v. Comm'r of Soc.*

11

*Sec.*, No. 21-CV-6024, 2023 WL 2549607, at *3 (W.D.N.Y. Mar. 17, 2023) (quoting DOT Code 241.367-038).  The SSA classifies this job as "unskilled," but as Judge Posner noted, "[t]hat doesn't sound like unskilled work."  *Hill v. Colvin*, 807 F.3d 862, 872 (7th Cir. 2015).  Indeed, the DOT classifies the position as requiring Reasoning Level of 4, which requires a person to:

> Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists.  Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.  Examples of rational systems are: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management and navigation.

*Tatum v. Saul*, No. CV 20-4276, 2021 WL 1020402, at *4 (C.D. Cal. Mar. 17, 2021) (quoting DOT Code 241.367-038).  Here, Clarke testified that she had only an 11th grade education, had not obtained a GED, and after high school only received vocational training.  (Administrative Tr. at 16).  Under SSA regulations, that is considered having only a limited education.  20 C.F.R. § 416.964(b)(3) ("We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.").  Yet, the ALJ made no inquiry about how someone with limited education could perform a job with a Reasoning Level of 4 (and a job that also requires a math level of 3 and a language level of 4).[3]  "The ALJ failed to ask the [Vocational Expert] if his testimony was

---

[3] "A Math Level of 3 contemplates the ability to compute discount, interest, profit, and loss; commission, markup, and selling price; ratio and proportion; and percentage.  Calculate surfaces, volumes, weights and measures."  *Moore v. Astrue*, No. No. 09-0734, 2010 WL 3306870, at *4 n.10 (W.D. La. July 30, 2010) (quotations omitted), *report and recommendation adopted*, 2010 WL 3306874, at *1 (Aug. 19, 2010).  And "[t]he DOT defines a language level of 4 as follows: Reading: Read novels, poems, newspapers, periodicals, journals, manuals, dictionaries, thesauruses, and encyclopedias.  Writing: Prepare business letters, expositions, summaries, and reports,

12

consistent with the DOT. The [Vocational Expert] here did not account for the apparent conflict and the ALJ did not provide an explanation that would resolve it." *Tatum*, 2021 WL 1020402, at *4 (finding legal error where claimant only had ninth grade education, yet ALJ agreed, without explanation, that he could perform job as investigator); *e.g.*, *Garcia v. Berryhill*, No. CV 17-3480, 2018 WL 1721722, at *6 (C.D. Cal. Apr. 6, 2018) (finding 10th grade education inconsistent with reasoning level of four). The failure to address this conflict is legal error that requires remand. *Gibbons v. Comm'r of Soc. Sec.*, No. 22-2730, 2023 WL 3830774, at *2 (2d Cir. June 6, 2023) ("We conclude the ALJ here failed to meet its affirmative obligation to probe into an apparent conflict between the reasoning level required in the Dictionary and the vocational expert's testimony."); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) ("[W]henever the Commissioner intends to rely on a vocational expert's testimony, she must identify and inquire into all those areas where the expert's testimony *seems to* . . . conflict with the *Dictionary*. In other words, . . . the Commissioner [must] obtain a reasonable explanation for any *apparent* —even if non-obvious—conflict between the *Dictionary* and a vocational expert's testimony.") (citations and quotations omitted).

## CONCLUSION

The ALJ's failure to heed much, if not all, of the Appeals Council's remand order is itself stunning. Perhaps more stunning is the Appeal Council's subsequent rubber-stamp affirmance of this second ALJ decision without explanation, despite the ALJ's

---

using prescribed format and conforming to all rules of punctuation, grammar, diction, and style. Speaking: Participate in panel discussions, dramatizations, and debates. Speak extemporaneously on a variety of subjects." *Garcia v. Berryhill*, No. CV 17-3480, 2018 WL 1721722, at *6 n.11 (C.D. Cal. Apr. 6, 2018) (quotations omitted).

13

ignorance of most, if not all, its directives and the presence of additional, significant errors. The resulting human toll of this cavalcade of errors and repeated failure to follow the law is both significant and unavoidable: additional years of waiting time on what has already been a multi-year odyssey for Clarke. The Court is hesitant to prolong what has already been a five-year plus wait for a resolution or subject Clarke to recycling "through the SSA bureaucracy simply because the ALJ has failed to produce a legally adequate opinion," even after having been directed to fix prior patent errors. *Piorkowski,* 2022 WL 17824052, at *4. As such, the Court grants Clarke's motion to remand, but the SSA is directed to hold another hearing that addresses each of the items discussed in this opinion (which includes the entirety of the Appeals Council's remand order) within the next 60 days, *i.e.* no later than September 18, 2023, and provide a decision no later than October 17, 2023. The Commissioner in her discretion should consider whether this case "warrants a fresh look by a new ALJ." *Blowe v. Comm'r of Soc. Sec.*, No. 19-CV-2658, 2020 WL 3129062, at *5 (E.D.N.Y. June 12, 2020) (quotations omitted). Regardless of which ALJ hears the matter, should there be another failure to address the issues identified in this opinion or otherwise follow the law, the Court will be forced to consider remand solely for the calculation of benefits. The entirely meritless motion on the pleadings made by the Commissioner is denied. The Clerk of Court is directed to remand and close this case.

SO ORDERED.

*/s/Sanket J. Bulsara* July 19, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York